and other defendants. Mr. Brignac, whenever you're ready. Thank you, Your Honor. May it please the court, Eric Brignac, for the appellants. As this court recently held, a district court cannot ignore a hostile judge.   Most of mitigation evidence summarily deny a motion to reduce the sentence, leaving both the defendant and the appellate court in the darkest of the reasons for its decision. That's exactly what happened here. This appeal is simply a natural and logical outgrowth of that concept from Martin from the 3582 C2 context into the 3582 C1B context. Here, every appellant presented non-frivolous argument. The district court didn't address them. He just filled out a preprinted checkbox form, and that was error. And so we asked this court to vacate those orders and to remand this case with the district court with instructions to provide a procedurally. What about the fact the government takes issue with the fact that your mitigating arguments were not provided to the district court until the reply? What's your response to that? Several responses, Your Honor. The first point I want to make, at least as regards to Mr. McDonald and Mr. Davie, those motions we both asked, asked in both cases for a hearing. And the way these were litigated in our district was we would file a motion and then the probation office would at some point file a modified pre-sentence report. And that occurred for all three of these defendants. We have joint appendix 255, 283, 308. And much like in original sentencing, that PSR modification discusses the guidelines and brings up facts such as post-sentencing rehabilitation or trouble someone got into in prison. And either in the context of an objection to that PSR modification or, as in this case, a reply, there was an expectation that the 3553A factors would be addressed. The reason that this court and all courts don't want litigants to raise issues or, more precisely, new arguments in reply briefs is to prevent sandbagging, to add to efficiency. Here, the government had every opportunity to put up yet. You have a question. So, so basically, so it was for two reasons. The mitigation arguments didn't come up until later. First of all, because you want to the probation office provided a lot of those mitigating factors. And secondly, because that wasn't the process that was being undertaken in your district. Right, Your Honor. And, you know, it was an evolving process, I think, across the country as we were litigating Section 404 motions. But certainly in our district, filing this motion to open the door and to show legal eligibility, expecting then that the probation office would present new facts, update the court as to what was happening. And we would then either through a hearing or, as in this case, a reply brief, put those 3553A relevant facts in front of the court. So, you know, there could have been a world, certainly, where a judge communicated through a standing order of something of that nature that, you know, I want every argument up front. I want to adjudicate these quickly. That was not what was happening. And so, again, the court had every opportunity to consider these arguments. The government's response briefs were very thorough and very fulsome. So they had their 3553A arguments. And so then we had the situation pretty much exactly as we did in Martin. Someone was eligible. Both parties put up their arguments. And just as in Martin, the district court erred by not addressing them and not acknowledging them. And again, that's all we asked for. It is a modest extension, a very natural extension of Martin. Does it matter, Mr. Brignac, that in Martin the court went out of its way to say that Martin's case was particularly compelling? There was a mountain of mitigation evidence that the court simply could not blow off by saying little or nothing. And I'm not, you know, suggesting that there wasn't anything presented in these cases. But these certainly are not Martin cases in the sense of the mitigation evidence being as strong and in the sense that the sentences in this case, in these cases, were not as severe as the one that Martin was faced with. So what about those distinctions might be enough to simply say that, in this case, simply checking off a block, indicating that the court did consider the relevant factors in granting. And in fact, the court did grant relief, partial relief in these cases, that that's enough. Your Honor, I respectfully disagree, actually, with a couple of your premises, if I may. Mr. McDonald hit a 276-month sentence. Mr. Davey had a 360-month sentence. So I do not think that these were not severe sentences. These were 20-, 30-year sentences. No, I didn't mean to suggest that they were not. I'm just suggesting in comparison to what Mr. Martin was facing. Go ahead. I'm sorry, Your Honor. You know, there are three, I think, very compelling facts, and two of which were present in Martin. In Martin, the court expressly noted that one of the arguments was that Ms. Martin had her GED. That was the case here. Mr. Davey's working. He's one class away. Mr. McDonald achieved his. Both are low-security inmates, which, again, was something that Martin specifically said was the exact sort of fact, the exact sort of post-sentencing mitigation conduct that had to be addressed. And I think critically for both of these guys, they were sentenced under mandatory guidelines. So a lot of what underlies this court's Lagree presumption, a lot of what underlies even the Chavez-Mesa framework, is this idea that a district court does not need to say as much because it can go back to the original sentencing. And the original sentencings in this case are fundamentally different in terms of 3553A than a world in which you have advisory guidelines. That's when 3553A becomes relevant. In Mr. McDonald's case, he had no criminal history, and less than 1% of the drugs for which that drove his guideline range were personally attributable to him. That is 3553A through and through. But at his original sentencing, he couldn't make those arguments. His guidelines were driven by the drug weight. Yes, Your Honor. Judge Harris. Counsel, I understood Martin to be saying, to really be focusing on the fact that there was post-sentencing mitigation evidence and that that's what took Lagree out of the picture more or less, just that you couldn't go back to the original sentencing in that case because that evidence hadn't been in front of the judge at the original sentencing. And you have that here too, right? The post-sentencing mitigation? Yes, Your Honor. We have the post-sentencing mitigation. And I would say in addition to that, we have the mandatory guidelines having become advisory. Yeah. And I appreciate that point too. I'm sorry, you said at the beginning, I think if I'm remembering right, almost your first sentence was that this was non-frivolous mitigating evidence. Is that your, you know, which I know you're getting from our blue line of cases. And is that your understanding that under Martin, right, you might not have to, the judge doesn't have to explain everything that's offered in mitigation. But if it's non-frivolous, if it's substantial enough to be non-frivolous, it should be explained. Exactly, Your Honor. And I don't think that there's a requirement in Martin that, you know, literally every word that comes out of defense counsel's mouth has to be addressed. But, you know, I do. I think the blue line of cases and the sentencing cases from this court that talk about non-frivolous arguments and, you know, Martin itself. So, and because those are present here. And again, I think in a couple instances in terms of the low security designation, the obtaining or getting close to obtaining the GED, that are basically Martin's facts. This court does not need to do any more than really do something the government hasn't, to my knowledge, and, you know, my colleague may dispute this, really disputed, which is that to the extent Martin applies, it applies in the C-1B context as well as the C-2 context. I know there's a lot of dispute over whether these facts are non-frivolous and whether the reply brief issue matters. But, you know, it is a very natural and logical extension. And I cannot think of a way that Martin could not be extended to this sort of sentencing mitigation. I'm sorry, sentence reduction proceeding. Your honors, the government also argues that this should be under plain error. We talked about in our reply brief the we raised. We brought this up after the district court issued its order. Plain error does not obviously require us to be psychic in that regard. And I actually do want to say one thing that I noticed this morning in my initial brief when I was rereading Martin for the 10th time, but apparently just taught this, we actually said it was an abuse of discretion. I think we're actually up here in de novo. Martin says abuse of discretion. I erroneously grabbed that.  And in either event, whether it is abuse of discretion or de novo, these facts are on all four with Martin. The law is on all four with Martin. So the result has to be on all fours with Martin. We need a remand to the district court to provide a procedurally adequate explanation so that this court and the litigants can know what the district court did. If there are no further questions. Yes, Your Honor. I don't have any further questions. Do my colleagues have? I don't. Thank you, Mr. Brignac. Thank you. Ms. Fritz. Good morning. May it please. Good afternoon. May it please the court. Christine Fritz on behalf of the United States. And the law leaves much to a district court's discretion regarding explanations. Counsel, can I just cut you off and go right to something your colleagues said? Because I had the same question. I did not see in your brief an argument that Martin's explanation requirement would not apply to first step back motions under 3582C1B. From the merits part of your brief, I got an argument that Martin is wrong. And I got an argument that Martin is a suggestion and not a holding. But if we were to assume just for present purposes that Martin is correct and it's a holding, is there any reason why it wouldn't apply to this subsection of the statute? I think that the Department of Justice's position is that there does not need to be an explicit on the record individualized explanation. I recognize that that is intention with Martin. But I don't think that the court. It's not just intention with Martin. It is irreconcilable with Martin. So for this panel, which is bound by Martin, is there an argument that Martin doesn't apply to this neighboring subsection of the statute? I would agree that it is a logical extension. However, that does not resolve the case here. I think, first of all, it's important to acknowledge that the Fourth Circuit case law is clear that a judge ruling on a 3582C motion need not respond to arguments made for the first time in the reply. There's published case law. There's Liguri, Smalls, May, and Fulton. And I think that makes sense. Because if something is significant enough that... Ms. Fritz, can I ask about that point? So that may be true as a principle of law. But in this case, there's no indication in the record, is there, that the district court relied on that premise to exclude the arguments. He simply signed a form order, in fact, indicating that he, in fact, had considered all of the relevant 3552A factors, which would seem to imply that notwithstanding the late submission of the relevant mitigating evidence in the reply, that he considered it. What evidence is there in the record that he didn't consider it? Well, first, I suppose I'm drawing a distinction between whether the judge considered the information that was placed before it. And I think that everything in the record indicates that the judge did consider that. However, we would dispute that there is... Well, let me be a little bit more precise, that he didn't... I want to be... You're making the argument that the judge relied on, or that we should rely on a procedural forfeiture rule to say, it was in the reply brief, therefore, the district court wasn't obligated to consider it. But there's no indication in this record that the judge relied on that rule of law to not consider the evidence. Then the only question is whether or not the district court judge, in fact, complied with his obligations to delineate a procedurally reasonable sentence by taking into account those factors. So, what's the evidence that the judge relied on the rule that arguments in a reply brief are forfeited or waived? I don't think that there is something in the record that says that the district court relied on that in terms of determining the extent of its explanation. I will say, however, that Legree speaks to that point. Legree talks about how, in the absence of contrary indications, that the district judge need not provide a full explanation in 3582C cases. And I think that there aren't those... Does the judge need to provide any explanation? You said a full explanation. Does the judge need to provide any explanation, in your view? In some cases, the form order will be a sufficient explanation. Okay. In this case, where the mitigating factors are arguably not frivolous. Yes. In this case, we think this is closer to... I think there's a spectrum that we would have here. And I think that you have a case like Chavez-Mesa on one side, and then you have defendants like Martin and Mangwell on the other. And when you're closer to the Chavez-Mesa end of the spectrum, the law doesn't require the court to say much, if anything. And I mean, the Supreme Court, in that particular case... Did the court here say anything? The court here used the same form order that was relied upon in Chavez-Mesa. So what words did it use? It specifically said, the order said that, upon motion of the defendant under 3582C1B for modification of a term posed of imprisonment, section 404 of the First Step Act, and having considered such motion, and taking into account the sentencing factors set forth in 18 U.S. 3553A. That's the same language that was in the order in Chavez-Mesa. And that was deemed by the court to be sufficient in that case, in response to an argument about a defendant's educational pursuits while in custody. And I think that we have to start... Counsel, can I stop you there, sort of on the spectrum and everything? I mean, one of the things we relied on in LaGree, and the court relied on in part in Chavez-Mesa, is this idea that in a resentencing, you know, our job, we have to know enough about what the district court is thinking to review it on appeal. And in a resentencing, we can look for context to what happened at the initial sentencing. And so the court at resentencing may have to say less. But as we explained in Martin, that doesn't apply, it can't apply by sort of logical terms to post-sentencing mitigation evidence, which was very much at issue here. We can't go back and look at the original sentencing to give us any context. So I think Martin has already done the work of distinguishing LaGree for a case like this. To begin with, I think there's a distinction between a de novo resentencing and a sentence reduction. Obviously, there is significantly different procedural posture, and less is required because we know that we're starting with a sentence that has either withstood appellate review or was not challenged. So therefore, there is less of an explanation requirement. In looking at Chavez-Mesa, the conduct at issue that the court was considering there in determining whether there was a sufficient explanation, was post-sentence mitigating conduct. There was some, but the court did talk in Chavez-Mesa extensively about how one of the big issues in that case was, look, can you go back and look at the initial sentencing to get context that way? And they said you can. And that's one of the reasons courts can say less on a resentencing. But we don't have that here. I mean, Chavez-Mesa was a 3582C case. So it was a sentence reduction case. And we are in a sentence reduction posture. And I think that the court can and should look at the entire record. I think Legree, I think Martin, I think all of those cases support the proposition that you need to look at the entire record. But I would suggest that Martin stands for the notion that there are some cases where the evidence of post-sentencing rehabilitation is so extraordinary that it gives the court pause as to whether there is the same rationale now after the passage of time. So, again, I think it's a continuum where you have individual defendants like Chavez-Mesa and you have, on the other end of the spectrum, a Martin and Manuel. And if you look at the Martin and Manuel case, they didn't simply say there was some evidence of post-rehabilitation offered or he took some classes. Going through Martin, they talk about an exemplary prison record, exhaustion of all education resources. They focus on the complexity of the case. I thought I read some of that in the mitigating factors with these defendants. I would suggest that the defendants may explain that as such, but I think that looking at it on the spectrum of defendants who are filing these motions, I don't think that they are extraordinary. They're not outstanding. Well, we don't really know, though, do we? That's sort of the problem because Martin also says, well, Martin stands for the proposition that a court cannot summarily deny a motion to reduce a sentence and leave both the defendant and the appellate court in the dark as to the reasons for the decision. And it actually, in listening to your argument, sounds like the government might be a little bit in the dark as to the district court's reasoning here. No, I think that Martin focused on a variety of things. The complexity of the case, the complexity of the individual defendants. They were all older defendants, nonviolent offenders with minimum history who had performed, I believe one of the quotes was... But we don't know what the court focused on here to even compare it to Martin. Well, I think that is where the library... All I have is a checkmark. I understand that, Your Honor. And in some cases, that is sufficient. I think that Chavez Mesa... And what makes it sufficient in these cases? In these cases, they are... All of these defendants, they're nothing like Martin and Manguel. Those individuals were extraordinary. Martin was described as the best post-sentencing behavior the AUSA had ever seen. All of these individuals, they have taken coursework, and that should be commended. And unlike Martin and Manguel, they will benefit from good time credit that would have never been available to Martin, and most likely not available to Manguel given his advanced age. In each Martin and Manguel, those sentences were effectively life sentences. I mean, Martin's sentence was a life sentence. Manguel was 75 years old. He had four medical furloughs, open-heart surgery, and was probably not going to see the remainder of his 10 years in custody. Okay, so if they're on death's door, you have to give your reasoning. I'm simply saying that these are factors that made Martin and Manguel more complicated, and I think that those are the factors that led this court to say, when you have a complex case, when you have extraordinary evidence of rehabilitation, and you have a sentence of that duration, we want the court to say a little more because we have concerns about whether adequate weight was given to these things. But in the typical case... Oh, I'm sorry. I just have sort of a chronology question. The district court order here, was that before or after our decision in Chambers? Do you know? It was before. Because I guess one concern I have is that it wasn't even clear until we decided in Chambers that district courts were supposed to look at 3553A factors on one of these motions, and it certainly wasn't clear as we held in Chambers that you must look at post-sentencing mitigation evidence. So I have a real concern about... I feel like the lack of explanation in this case gives me special concern because the law was so much in flux, it really wasn't clear at that time exactly what a district court was supposed to be looking at. How can I sort of address that concern? I think the district judge should be taken at its word that it looked at the law, it looked at the motion, and it considered the 3553A factors. And I don't think that there is adequate contrary indication to take this out of a Ligree presumption case. Didn't the government sort of argue... And I actually can't remember, so please remind me. I thought the government's main argument was, look, the sentencing guideline range doesn't change as a result of the first step back, so you don't really have to do anything else. That's a good enough reason by itself to deny a reduction. And so my concern is that the district court may have agreed and not really, you know... Again, we don't know. We're all just guessing. But it would turn out that that would be incorrect under Chambers. So that's a concern I have. I think that the change of sentencing range is a factor to be decided in terms of whether this is a complicated or compelling case. Here we have a judge who granted, in part, all of these motions. So I think that we can safely conclude that... By reducing the supervised release from five years to four years. Yes. That was the grant? Yes. Okay. And I mean, I will say, Mr. Ballard, he is on supervised release. So that was... And it wouldn't have been helpful... Wouldn't it have been... Well, I think it might have been helpful because that does seem like such a limited grant that it would be helpful for the court reviewing it to understand what the district court was thinking in reducing it by that amount. We see these, you know, the large sentencing range and then the mitigation factors. And it seems a reduction by such a small amount, it would be helpful to have an individualized explanation, as Martin indicates. I don't think that's a question. You can go on with your question, with whatever it is you wanted to say. I may be able to respond, in part, to your concern about the amount. And the fact is that four years is the mandatory minimum that's applicable to these individuals. So the court couldn't have gone any lower. So I think that, you know, that suggests, and I think it's a reasonable inference, that the court concluded that it wanted to maintain the same term of imprisonment, but it was comfortable reducing the term of supervised release. And I appreciate, and I think that the dialogue that we're having here is very much like the dialogue that was between the majority and the dissent in Chavez-Mesa, that it wouldn't be that hard to require more or to ask the judge to do a little bit more. But the law has come out and it has said that in certain cases, and I would submit in the typical case, the form, although it is a very brief explanation, it is sufficient. And I think that these defendants, they are typical defendants. These were all individuals who were sentenced in their 30s. They were involved in significant drug trafficking conspiracies. McDonald, although he didn't receive a weapons enhancement, he attempted and nearly ran over a probation officer, or a police officer, when fleeing. Ballard... That was his initial sentence, right? Yes, and these were all things that are considered. And I think also Davey, for example, he was involved in turf wars and shootouts. So when you look at somebody like Martin and Mangwell, who were nonviolent offenders, who will be in their late 70s or 80s upon release, who had very limited criminal history and had done extraordinary rehabilitation, above and beyond themselves, they created programs for other people. And then when you look at individuals who had relatively extensive drug trafficking conspiracies, and I do, I commend these individuals for their efforts to better themselves, for taking courses, for taking advantage of the drug rehabilitation treatment that's available to them. But that's what we would want a defendant to do. And I think that the system does reward that by way of the good time credit. I mean, for example, McDonald, because of his post-sentencing conduct, the Bureau of Prisons has awarded him, I think, more than 850 days of good time credit. So it's not as if we're... Ms. Prince, can I ask you about... Yes. I think you touched on this briefly about Chavez-Mena, and you just went over the... and you quite properly lauded the defendants for taking courses while in prison. So in Chavez-Mena, the Supreme Court acknowledged the fact that the petitioner in that case had taken educational courses in prison, acknowledged that the district court was required to consider that. It also noted that the defendant had broken a significant rule in prison and balanced that and then said, we think the judge here did enough. So is it your argument that these defendants fall closer to the Chavez-Mena type of defendants? And the question, I guess, is how are we supposed to figure out on which side of a ledger a particular defendant falls? Is this just an ad hoc determination? And that's not a very satisfying rule of law going forward. I think that district judges are tasked with determining whether somebody or something falls in the heartland every day. I do, however, think that there are some parameters that this court could offer to guide that discretion. For example, the complexity of the case, and that's something that was referenced in Martin. And I will say each of these defendants, they filed boilerplate motions and then they each described their cases as straightforward. So they're not presenting complicated cases. They're not presenting the unusual, truly phenomenal rehabilitation that are in these other cases. And I think that the court can see that. I think there may also be circumstances where the record does have a contrary indication as to whether the court, as it's certified in its order, considered the other factors. For example, some of the cases cited in Martin, in Hardy, for example, which is an unpublished case, the judge in that case said that it was not presented any arguments. And it had, in fact, been presented arguments. And this court sent it back. Or in McKenzie, there was a jointly agreed sentence that the parties both recommended. This court was without the benefit of the original transcript. And under those circumstances, the court sent it back. If, for example, in these defendants' original sentencing, the judge said, I would give you a lower sentence if I could, but my hands are tied here. And then, upon having the discretion to do something different, it doesn't do something different. Unless there's something apparent from the record, I think we have a contrary indication, and the court would send it back. But we have nothing apparent from the record here. That's the problem. You might be right. Maybe the district court's ultimate decision might be a reasonable one. I just don't know how I know that by a checkmark. May I respond? I see I'm over my time. Absolutely. Go ahead. I appreciate the struggle here. And I think that that's something that Chavez Mesa has decided that in some cases, typical cases, where it's an analytically simple issue, and it's the same sentencing judge who has the full record before it, sometimes that's just enough. And that's where the Ligre presumption comes in, that we're going to give the district judge the benefit of the doubt that when he says, in reviewing this discretionary reduction, I thought about these factors. Unless there's something compelling that suggests otherwise, we defer to that. And I understand it's an uncomfortable position, but I think that that's what the state of the law is for sentence reduction motions right now. Can I address? I know you're out of time, and I apologize, and I apologize to my colleagues and everybody, but I do have just some concerns. One just sort of, and I think I'm picking up on Judge Diaz, and so maybe it's not helpful to say it again, but there's like a manageability problem here, in a sense that we're going to overlay, like we're not even reviewing yet the grant or the denial of a reduction. That's what normally we might get into, well, I don't know, like how great, how strong was the mitigating evidence? But before we even get there, we have to make like a preliminary judgment about, well, how strong is the mitigating evidence, strong enough to require an explanation, and then we'll make a different judgment about whether it's so strong that there really should have been a reduction. It's almost like you're asking us to do the job that the district court does when the district court decides whether the mitigating evidence warrants a reduction. And it just seems like we're adding a layer of evaluation of the strength of the mitigating evidence that's going to be very hard to manage. And it just, it seems like this all stems from this functional question, can we review what the district court did? Is there enough here that we can review it? And it just, you know, if the mitigating evidence is so unpersuasive that we can be comfortable assuming, oh yeah, like it's obvious why the district court didn't give this any weight. Who would give this any weight? That's one thing, but it seems to me that if there's more than that, like I just don't understand functionally how we can review this decision. The evidence, it's more, as you agree, it's further along the spectrum than what the Supreme Court was looking at. And it's not so obviously non-compelling that I at least can be comfortable, like, well, of course the district court didn't address it because it didn't add up to anything. And so I just am really struggling on how I could review this decision for an abuse of discretion without knowing more. And the other point I wanted to make is that... No, that's all. I'll just leave it at that. Sorry, taking up too much of your time. Go ahead. You can respond to that, Ms. Fritz, if you'd like. I think, again, this gets us back to Legree and Chavez-Mesa, where looking at the record in its totality, the district court made the determination that it was comfortable with the sentence it imposed in the first instance. That sentence either withstood review or they didn't seek review. So we're starting with a reasonable sentence, which is why I think this differentiates it a little, significantly, actually, from an original sentencing standpoint. I also think that in a sentence reduction context, I think that this court's review of the decision whether to grant the motion or not is more limited than a review of an original sentence for substantive reasonableness. And I posit that because the Act itself says that nothing in the Act requires the court to do anything. And if this court were to disagree in terms of a substantive reasonableness review, that the defendant should have gotten a lower sentence, I think that runs into the clear wording of the Act. Now, of course, I think that the review would be for abuse of discretion. So if there was an indication that it was arbitrary and capricious or rested on a factual mistake or an improper understanding of the facts, that would be different. But I think that, I don't know, I don't believe that this court has said that First Step Act motions are reviewed for substantive reasonableness yet. I would urge the court that it's significantly different from original sentencing. And I think that that also helps to inform the level of explanation that is required. I would submit that each of these defendants is far more on the Chavez-Mesa spectrum and that we can trust the judge when it chose, when it said it considered the 3553A factors and it chose to leave the original sentence intact with the exception of the supervised release. All right. Thank you, Ms. Fritz. Mr. Brignac, you've got some rebuttal. Thank you, Your Honor. One quick point, Ms. Fritz, I would like to point out we referred to these as straightforward in our original motion. The legal eligibility was straightforward. They got in the door. They were eligible. We do not think that the 3553A arguments are straightforward such that the district court could just answer it with a check. And I think what's overlying all of this is what the court said in Martin. We are all in the dark here. Did the district court pre-chambers think that it lacked the power to go down in terms of the term of incarceration because the guidelines hadn't changed? There's some evidence it actually did incorrectly think that because it went down with the supervised release. Or your point, Judge Diaz, did the district court believe it did not have the power or chose in its discretion not to rely on arguments in our reply brief? We don't know because the district court didn't tell us. Did the district court, for instance, think that the LaGree presumption required a great weight of evidence to rebut that presumption? Did it make a legal error there? We don't know. There are lots of legal errors the district court could have made to do what it did. And we don't know what those would be. That's exactly why this needs to go back to provide that explanation. I would also point out my colleague talked about Section 404C which says nothing in this section shall be required to grant a reduction. 404C also says that a defendant shall not have the power to raise one of these motions if a previous motion and I did not have the language right in front of me was denied effectively on the merits. So another problem with what the district court did here we don't know if he exercised his discretion and denied these on the merits in his discretion then these guys are all barred from raising another motion. If, however, he thought he was legally barred say he made chambers error I can't consider this on the merits because under chamber, pre-chambers your guidelines didn't change they would be eligible to come back. So even 404C itself it contemplates the appellate court or the parties having to know what the district court did. And we did not get that here. And finally I think this gets a little bit into what Judge Harris was saying United States versus Provence which was out of my office and that was a sentencing case not a sentence reduction case. But in Provence this court really clarified that procedural reasonableness is necessary for this court to do its job. It's not just some hoops for the district court to jump through and it's not just an adjunct to the substance. They're all part and parcel and without knowing what a district court did an appellate court can't properly adjudicate it. You guys need to properly adjudicate it. So please send these back and please let the district court know and again yes I understand y'all's concerns about this being ad hoc and this being case by case but you know there are facts in this case that were present in Martin there are facts in this case that even Martin didn't have in terms of mandatory guidelines and the like. So wherever we are on this spectrum we are I would humbly submit much closer to Martin than to Chavez Mesa and finally in Martin itself the district court said and I have this I hope I'm quoting it correctly that the district court said it carefully weighed the 3553A factors and that's not enough. A district court saying it weighed it. It needs to consider the evidence it needs to address any legal issues so this court can do its job so we would ask for vacating the orders and remanding. Thank you. Thank you Mr. Brignac. Like every good advocate you took a holding in a case Provence that your office fought tooth and nail and used it to your advantage here today. Well done. Thank you your honor. Thank you Ms. Fritz as well for your able argument. We appreciate the efforts of both counsel here this afternoon. The case was ably argued as you know more than most we would typically come down from the bench and shake your hands. We obviously cannot do that but certainly appreciate the arguments you presented here today. Be well and stay safe and with that the court will stand adjourned until tomorrow morning. Thank you very much. The dishonorable court stands adjourned until tomorrow morning. God save the United States and the dishonorable court.
judges: Albert Diaz, Stephanie D. Thacker, Pamela A. Harris